UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MATHEW TATE,

    Petitioner,

v.

RON VAN BOENING,

    Respondent.

Case No. C08-5524FDB-KLS

REPORT AND RECOMMENDATION

Noted for January 2, 2009

Petitioner is a state prisoner currently incarcerated at McNeil Island Corrections Center, located in Steilacoom, Washington. This matter is before the Court on petitioner's petition for writ of *habeas corpus* filed with this Court pursuant to 28 U.S.C. § 2254. After a careful review of the record, the undersigned submits the following report and recommendation, recommending the Court deny the petition as untimely.

## DISCUSSION

On August 29, 2008, petitioner filed an application to proceed *in forma pauperis* and a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. (Dkt. #1, #3-#7). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on petitions for writ of *habeas corpus* filed in federal court by persons in custody pursuant to the judgment of a state court.

Dictado v. Ducharme, 244 F.3d 724, 726 (9th Cir. 2001); 28 U.S.C. § 2244(d). Section 2244(d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d). This one-year statute of limitations is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." Dictado, 244 F.3d at 726; 28 U.S.C. § 2244(d)(2). Conversely, the AEDPA's statute of limitations "is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case 'pending' during that interval." Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

Following a plea of guilty for the crime of first degree rape of a child and misdemeanor possession of marijuana, petitioner was sentenced to a prison term of 132 months to life by the Pierce County Superior Court on December 5, 2003. (Dkt. #8, p. 2[1]; Dkt. #8-2, Exhibit A). Petitioner did not file any direct appeal of his conviction or sentence. (Dkt. #8, p. 3). Thus, the date he was sentenced is the date his judgment became final. See RCW 10.73.090(3).[2] The AEDPA's one-year statute of limitations, therefore, began to run on December 6, 2003, and continued to run for a total of 568 days until June 27, 2005, when

---

[1] This page number is the page number that appears on the *habeas corpus* petition form petitioner has used. However, because the petition begins with page 2, this is actually the first page of the petition. For the sake of clarity, the undersigned shall cite to the page numbers appearing on the petition form itself.

[2] RCW 10.73.090(3) states in relevant part that "a judgment becomes final on the last of the following dates: (a) The date it is filed with the clerk of the trial court; (b) The date that an appellate court issues its mandate disposing of a timely direct appeal from the conviction; or (c) The date that the United States Supreme Court denies a timely petition for certiorari to review a decision affirming the conviction on appeal." As petitioner did not file a direct appeal of his conviction or sentence in state court, the date on which his judgment and sentence was filed with the Pierce County Superior Court is the date his judgment became final. See (Dkt. #8-2, Exhibits A and D).

REPORT AND RECOMMENDATION
Page - 2

petitioner filed his first personal restraint petition with the Washington State Court of Appeals, Division II. (Dkt. #8, p. 4; Dkt. #8-2, Exhibit B).

The court of appeals dismissed that petition as being frivolous on May 4, 2006. (Id.). The statute of limitations thus began to run again on May 5, 2006, and continued to run for an additional 153 days until October 5, 2006, when petitioner filed a second personal restraint petition with the Washington State Court of Appeals, Division II.[3] (Dkt. #8, p. 5). That petition was dismissed as untimely by the court of appeals on June 4, 2007.[4] (Dkt. #8, pp. 5 and 10; Dkt. #8-2, Exhibit C). The Washington State Supreme Court Commissioner denied petitioner's motion for discretionary review of the court of appeals' dismissal of his petition on October 26, 2007. (Dkt. #8, p. 10; Dkt. #8-2, Exhibit D). The statute of limitations thus began to run again on October 27, 2007, and continued to run for another 306 days until August 29, 2008, the date petitioner filed his *habeas corpus* petition with this Court.

It therefore appears that far more than one year – specifically a total of 1,027 days, or nearly three years– ran at the state level prior to petitioner's filing of his federal *habeas corpus* petition, making that petition time barred under the AEDPA's statute of limitations. Accordingly, the only way this Court may review petitioner's *habeas corpus* petition is if the statute of limitations is subject to equitable tolling. Although the "AEDPA's statute of limitations is subject to equitable tolling," it is "unavailable in most cases." Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002) (citation omitted). Equitable tolling "is appropriate only 'if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time.'" Id. (citations omitted); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001); Allen v. Lewis, 255 F.3d 798, 799-800 (9th Cir. 2001).

"External forces," not petitioner's "lack of diligence" must account for his or her failure to file a timely petition. Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). As the Ninth Circuit Court of

---

[3] Petitioner states in the federal *habeas corpus* petition form itself that he filed his second personal restraint petition with the Washington State Court of Appeals on June 4, 2007 (Dkt. #8, p. 5). However, it appears that petitioner actually signed it on October 5, 2006. (Dkt. #8-2, Personal Restraint Petition, p. 22). Presumably petitioner mailed his petition to the court of appeals, or delivered it to prison authorities for forwarding thereto, on the same day he signed it. Thus, that is the date the petition shall be deemed to have been filed with the court of appeals as well. See Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002) ("[F]ederal and state habeas petitions are deemed filed when the pro se prisoner delivers them to prison authorities for forwarding to the Clerk of the Court.").

[4] Although the order apparently was signed on June 1, 2007, it appears not to have been filed until June 4, 2007. See (Dkt. #8-2, Exhibit C, pp. 1 and 3).

Appeals has held:

> It will normally be much more difficult for a prisoner to demonstrate causation where he encounters the "extraordinary circumstances" in the beginning or middle of the limitations period than where he encounters them at the end of limitations period. This is the case because, if the prisoner is diligently pursuing his habeas petition, the one-year limitations period will ordinarily give him ample opportunity to overcome such early obstacles.

Allen, 255 F.3d at 800; see also Valverde v. Stinson, 224 F.3d 129, 134 (2nd Cir. 2000) (prisoner required to demonstrate causal relationship between extraordinary circumstances and lateness of filing); Fisher v. Johnson, 174 F.3d 710, 715-16 (5th Cir. 1999) (rejecting equitable tolling claim because petitioner still had over six months to complete federal *habeas corpus* petition after termination of allegedly extraordinary circumstances). Further, ignorance of the law, "even for an incarcerated pro se petitioner, generally does not excuse prompt filing." Marsh v. Soares, 223 F.3d 1217, 1220 (9th Cir. 2000) (quoting Fisher, 174 F.3d at 714.

Here, there is no indication that extraordinary circumstances beyond petitioner's control made it impossible for him to file his petition on time. Indeed, petitioner does not argue such circumstances exist in this case. Rather, he argues the Court should consider the merits of his petition on the basis that his conviction constitutes a fundamental miscarriage of justice, as it resulted in the conviction of one who is actually innocent. (Dkt. #8, p. 14). Essentially, what petitioner is asking the Court to do in so arguing, is to find he falls under the fundamental miscarriage of justice exception to the procedural default doctrine. That doctrine, however, and the narrow exceptions thereto, only apply to those situations in which a state court has declined to hear a petitioner's federal claims (because of that petitioner's failure to meet a state procedural requirement), and not the failure, as in this case, of a petitioner to file a *habeas corpus* petition within the time frame required by federal law.

As noted above, "[t]he procedural default doctrine 'bar[s] federal habeas [corpus review] when a state court [has] declined to address a prisoner's federal claims because the prisoner . . . failed to meet a state procedural requirement.'" Boyd v. Thompson, 147 F.3d 1124, 1126 (9th Cir. 1998) (quoting Calderon v. United States District Court, 96 F.3d 1126, 1129 (9th Cir.1996) (quoting Coleman v. Thompson, 501 U.S. 722, 729-30 (1991)). Thus, for example, a district court may not consider the merits of a *habeas corpus* petition if the petitioner failed to exhaust state court remedies, and the state's highest court now would find the federal claims contained therein procedurally barred. Coleman, 501 U.S. at 735

REPORT AND RECOMMENDATION
Page - 4

n.1; Eisermann v. Penarosa, 33 F.Supp.2d 1269, 1274 (D. Haw. 1999) ("[I]f a petitioner has never raised his federal claim to the highest state court available and is now barred from doing so by a state procedural rule, exhaustion is satisfied because no state remedy remains available, but the petitioner has procedurally defaulted on his claim.").

It is true that from the statements in petitioner's federal *habeas corpus* petition, and the exhibits attached thereto, it seems the Washington State Court of Appeals dismissed his second personal restraint petition as being time barred. (Dkt. #8, p. 12; Dkt. #8-2, Exhibit C). This is because he filed it more than one year after his judgment became final. (Dkt. #8-2, Exhibit C); RCW 10.73.090(1) ("No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.").

Petitioner's personal restraint petition also did not fall within any of the six statutory exceptions to this mandatory time limit. (Dkt. #8-2, Exhibit C); RCW 10.73.100. The Washington State Supreme Court Commissioner, furthermore, denied petitioner's motion for discretionary review on the same basis, and it does not appear that petitioner challenged that ruling. (Dkt. #8-2, Exhibit D). While not entirely clear, it seems that petitioner is asserting as federal claims in this Court the same claims he asserted in his second personal restraint petition. This is because although petitioner does not specifically set forth those claims in his actual *habeas corpus* petition, he wrote "SEE ATTACHED SHEETS" in the spaces provided on the petition form for setting forth claims and facts in support thereof. See (Dkt. #8).

The only document petitioner attached to his petition that sets forth potential claims is a copy of his second personal restraint petition, in which he alleges ineffective assistance of counsel, government mishandling/lack of investigation/privacy act violations, actual innocence/insufficiency of evidence, and prosecutorial misconduct/malicious prosecution. See id. Petitioner, however, has not made clear that these are the claims he is asserting to the Court in this proceeding. In addition, regardless of this and of whether or not he properly has asserted them as federal claims, petitioner's *habeas corpus* petition, as discussed above, is now barred from federal review under the AEDPA's one-year statute of limitations. The Court thus does not even get to the issue of procedural default.

Even if petitioner could overcome the fact that he now is time-barred, furthermore, and get to the

REPORT AND RECOMMENDATION
Page - 5

issue of procedural default, he has not shown he is entitled to review of his *habeas corpus* petition under any of the exceptions to that doctrine. Only if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," will the petitioner be entitled to federal *habeas corpus* review. See Boyd, 147 F.3d at 1126 (citing Coleman, 501 U.S. at 750); see also Sawyer v. Whitley, 505 U.S. 333, 338 (1992) ("Unless a habeas petitioner shows cause and prejudice . . . a court may not reach the merits of . . . *procedurally defaulted claims* in which the petitioner failed to follow applicable state procedural rules in raising the claims.") (emphasis in original).

Petitioner does not allege he has demonstrated cause and actual prejudice. He does argue, as noted above, that he is entitled to federal review under the fundamental miscarriage of justice exception. See Sawyer, 505 U.S. at 339 ("[E]ven if a state prisoner cannot meet the cause and prejudice standard, a federal court may hear the merits of the [procedurally defaulted claims] if the failure to hear the claims would constitute a 'miscarriage of justice.'"). This exception allows procedurally defaulted claims "to be heard if the petitioner 'establish[es] that under the probative evidence he has a colorable claim of factual innocence.'" Id. (quoting Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986)). However, it is a "narrow class of cases" that falls within this exception. Schlup v. Delo, 513 U.S. 298, 314-15 (1995).

It is only those "'extraordinary case[s], where a constitutional violation has probably resulted in the conviction of one who is actually innocent'" that "the merits of a defaulted claim" can "be reached." Sawyer, 505 U.S. at 339 n.6 (quoting Murry v. Carrier, 477 U.S. 478, 496 (1986)); see also Schlup, 513 U.S. at 321. In order to meet this standard, the petitioner must:

> . . . "[S]how a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt."

Sawyer, 505 U.S. at 339 n.5 (quoting Murry, 477 U.S. at 455 n.17). In order to be able to argue the merits of his or her claims, the petitioner first must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." Schlup, 513 U.S. at 316. "[T]he evidence must establish sufficient doubt about [the petitioner's] guilt to justify the conclusion that [his or her conviction] would be a

miscarriage of justice *unless* his [or her] conviction was the product of a fair trial." Id. (emphasis in original).

The focus here, however, "is concerned with actual as compared to legal innocence." Sawyer, 505 U.S. at 339. "To establish the requisite probability" that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent,'" the petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327 (quoting Carrier, 477 U.S. at 496). This requires the petitioner "to support his [or her] allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Id. at 324. The United States Supreme Court has emphasized the high degree of evidentiary support needed here:

> A prototypical example of "actual innocence" in a colloquial sense is the case where the State has convicted the wrong person of the crime. Such claims are of course regularly made on motions for new trial after conviction in both state and federal courts, and quite regularly denied because the evidence adduced in support of them fails to meet the rigorous standards for granting such motions. But in rare instances it may turn out later, for example, that another person has credibly confessed to the crime, and it is evident that the law has made a mistake.

Sawyer, 505 U.S. at 340-41. Thus, "[b]ecause such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324.

For this reason, petitioner's claim of actual innocence in this case fails as well. Petitioner has not come forth with any "new reliable evidence," such as that listed by the Supreme Court above, of his actual innocence. Instead, petitioner merely points to things that could or should have been done or not done by defense counsel or the state. For example, petitioner claims statements he made to police detectives after his arrest were coerced by "false promises of release." (Dkt. #8-2, Personal Restraint Petition, pp. 5 and 15). He also claims he agreed to a plea deal based on the erroneous assurance of defense counsel that he would face much less prison time if he did so. (Id. at p. 6).

Petitioner further alleges defense counsel failed to move for dismissal due to insufficient evidence to sustain a conviction, and failed to conduct a proper investigation of a witness who could have testified as to the events in question. (Id. at pp. 7, 9, 12-14). In addition, petitioner alleges the state was required to, but did not perform, a proper criminal investigation before invading his privacy and disrupting his life with unsubstantiated charges. (Id. at p. 14). Finally, petitioner asserts there was insufficient evidence to

convict him – for example, he claims that "there was NO evidence that penetration transpired," and that a psychiatric evaluation of the victim should have been ordered, as there was "little or no corroboration" of her allegations against him and "the effect" on her "emotional or mental condition upon her veracity" had been "questioned" by "the defense." (Id. at pp. 16-18).

None of these claims and allegations, however, constitute the kind of "new reliable evidence" that is contemplated in Schlup and Sawyer, and that would be sufficient to show that it is more likely than not that no reasonable juror would have convicted him in the light that evidence. Indeed, petitioner's claims regarding his interrogation and defense counsel's assurances regarding acceptance of a plea agreement do not even implicate new evidence. The same is true with respect to his allegation regarding invasion of his privacy by the state. Petitioner also does not come forth with any reliable evidence that the witness whom he alleges should have been investigated would have provided trustworthy testimony establishing to the degree of sufficiency necessary his actual innocence.

As to plaintiff's claim that there was insufficient evidence to convict him at trial, this is not the same as claiming actual innocence. Instead, it goes more to the question of legal innocence, which as discussed above, is distinct from what petitioner would need to prove in order to overcome application of procedural default in this case. Lastly, to the extent a psychiatric evaluation might have provided "new" evidence, petitioner makes no showing as to what such an evaluation would establish in regard to the victim's allegations, or, even if it did bear on those allegations, that it would be sufficient to establish with the requisite probability his actual innocence.

## CONCLUSION

Because petitioner has failed to timely file his federal *habeas corpus* petition within the AEDPA's one year statute of limitations, the Court should deny the petition. In the alternative, if the Court finds petitioner has timely filed his federal *habeas corpus* petition, or that equitable tolling applies in this case, it should deny the claims contained therein as being procedurally defaulted.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit

imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set this matter for consideration on **January 2, 2009**, as noted in the caption.

DATED this 8th day of December, 2008.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 9